IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON

| | | |
|---|---|---|
| WENDY L. LANEY, | ) | CASE NO. 5:21-CV-01290-CEH |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | CARMEN E. HENDERSON |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | MEMORANDUM OPINION AND |
| Defendant, | ) | ORDER |
| | ) | |

I.  **Introduction**

Plaintiff, Wendy Laney, seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 8). Because the ALJ followed proper procedures and his findings are supported by substantial evidence, the Court AFFIRMS the Commissioner's final decision denying Laney SSI and DIB.

II.  **Procedural History**

In November 2019, Laney filed applications for SSI and DIB, alleging a disability onset date of November 21, 2016. (ECF No. 7, PageID #: 224, 226). The applications were denied initially and upon reconsideration, and Laney requested a hearing before an administrative law judge ("ALJ"). (ECF No. 7, PageID #: 176). On November 4, 2020, an ALJ held a hearing, during which Laney, represented by counsel, and an impartial vocational expert testified. (ECF No. 7, PageID #: 56). On November 17, 2020, the ALJ issued a written decision finding Laney

1

was not disabled. (ECF No. 7, PageID #: 37). The ALJ's decision became final on May 3, 2021, when the Appeals Council declined further review. (ECF No. 7, PageID #: 26).

On July 2, 2021, Laney filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 10, 13, 16). Laney asserts the following assignments of error:

> (1) The administrative law judge erred in his conclusion that treating rheumatologist Dr. Kuchynski's opinion was "not persuasive" when it is consistent with and supported by the treatment record and there is not a persuasive opinion to the contrary.
>
> (2) The ALJ erred in relying on activities out-of-context to undermine both the opinion of Dr. Kuchynski and Ms. Laney's experience of symptoms, without considering the support Ms. Laney required to perform such activities.

(ECF No. 10 at 16, 19).

### III. Background

#### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Laney's hearing:

> In written reports and testimony, the claimant alleged an inability to sustain full-time work due to a combination of symptoms. Rheumatoid arthritis and fibromyalgia limit use of the arms and hands, and cause pain throughout the body. The claimant has difficulty with opening things. Her hands swell. Standing and walking are limited to 10 minutes before the legs feel heavy and hand pain/tingling increases [from] having her arms at her sides. Nothing helps with pain. The claimant tried multiple medications including injections, Oxycodone, Plaquenil, Methotrexate, and Humira. Sleep is limited to 3-4 hours per night. (Testimony) In a written report, the claimant indicated that she "had to stop working due to the fact [she] had a child," and also due to physical symptoms. (B1E/3) She reported that waking up/down stairs "is not an option," although she testified that she goes up/down the stairs to wash laundry in the basement once or twice per week. The claimant was able to complete her own written reports, including a Function Report. Her writing was neat and easy to read, despite

>alleging very little use of the hands. (B4E) The claimant testified that she drives, while she denied this activity in her written report. (B4E/4).

(ECF No. 7, PageID #: 44–45).

B.     **Relevant Medical Evidence**

The ALJ also summarized Laney's health records and symptoms:

>In August 2017, the claimant had normal gait, strength, coordination and range of motion in all extremities. There was some swelling of the dorsum of the right hand and left index finger. There was spinal tenderness. The claimant was "able to do housework….and able to work with limitations." She took opioid pain medication, Plaquenil, and other medications, but denied side effects. (2F/39-43) At the next visit in March 2018, there were no changes to clinical exam or treatment via conservative medication management. (B2F/34-38)

>The claimant went off her medications due to pregnancy. She delivered a healthy baby in July 2018. In September 2018, she reported increased pain after ceasing medication. An exam showed normal strength, gait, and range of motion. There was swelling in the dorsum of the hand. Psychiatric exam remained normal. The plan was to resume medications. (B2F/28-33)

>In November 2018, the claimant was babysitting in addition to caring for her own children. Her youngest child was 4 months old. The claimant told her physician that she had to "singlehandedly take care of the children as her significant other works for a construction company." The claimant's mother provided some assistance in the care of these children. An exam showed no edema, and no other abnormalities of the extremities. (B1F/11-13)

>There was a flare up of pain and swelling in the hands in December 2018. The clamant was still not taking any medications for rheumatoid arthritis. She was advised to start a steroid taper, and return in 3 months. (B2F/22-27)

>A February 2019 clinical exam was normal with a primary care source. There was no edema or other abnormalities in the extremities. (B1F/11) However, the claimant reported increased pain during a February 2019 rheumatology exam. She had swelling in the hand and knees. Gait, strength, range of motion and psychiatric exam were normal. (B2F/17-21) In May 2019, the

claimant denied improvement with Methotrexate. There were no significant changes to clinical exam, except for some swelling in the feet. (B2F/12-16)

In August and September 2019, the claimant denied any improvement of symptoms after taking an increased dose of Methotrexate. However, blood markers for rheumatoid arthritis showed objective improvement. Physical exams were normal. There was no edema, weakness, or paresthesia/numbness. (B1F/5-9) The claimant admitted that massage did help "a little." There were no side effects of medication. (B2F/7) The claimant continued to report pain and swelling in November 2019. (B2F/2)

At a February 2020 rheumatology follow-up, there was swelling in the hands, wrist and ankles. There were 12 tender points. The claimant maintained normal gait, strength and range of motion. Psychiatric exam was normal. The claimant continued Humira injections and opioid pain medication. She reported significant pain relief from medications. She was encouraged to engage in aerobic exercise. (B8F/6-11) The next session in May 2020 was a telehealth visit due to COVID-19. (B8F/1-5)

The claimant participated in physical therapy in 2020. (B6F; B9F) She was poorly compliant, with numerous no shows and cancelled appointments. (B9F/1, 5, 19, 26, 27, 28, 29, 43, 50, 64, 68-69, 79, 80, 81, 82, 86, 94, 98, 102) The claimant reported that soft tissue mobilization was "very helpful in relieving pain." (B9F/106) Pain increased by May 2020, after a two-month period of no therapy sessions. The claimant reported that she was very busy homeschooling three children. (B9F/104) Her compliance with the home exercise program was only "sporadic." (B9F/106) As of July 2020, there were 22 visits and 17 cancel/no shows. (B9F/103) The claimant was discharged from physical therapy on July 13, 2020. At that time, the claimant reported she could "do more yardwork and activities with the kids" despite pain. She felt ready for discharge. The claimant reported 50% improvement of symptoms. Lower extremity strength was 4/5. Upper extremity strength ranged from -4/5 to 5/5. (B9F/111-114)

At the most recent rheumatology visit of record in August 2020, the claimant reported pain in her arms. She remained able to perform housework with some limitations. There was a "partial response" to medications. Dosing was increased. (B10F/1-6)

In regards to allegations of mental limitations, these impairments were treated conservatively with medication. Medication helped

4

> with symptoms. The claimant did not seek specialized mental health treatment. (B1F/5, 7) The evidence shows she remained able to care for young children and complete normal daily activities with some limitations due to pain. Further, mental status findings were consistently normal as noted throughout this decision.

(ECF No. 7, PageID #: 45–46).

### C. Opinion Evidence at Issue

#### 1. State Agency Medical Consultants

Four State Agency medical consultants reviewed the medical evidence and provided the same opinion. The reviewers suggested the following RFC: "light work as defined in 20 CFR 404.1567(b) with the following additional limitations. The claimant can frequently handle and finger bilaterally. The claimant cannot climb ladders, ropes, or scaffolds. The claimant cannot work at unprotected heights or near moving mechanical parts." (ECF No. 7, PageID #: 119–20, 132–33, 145, 155). The ALJ found these opinions were not fully persuasive nor supportable. He explained:

> [T]he updated record is more consistent with greater limitations. I give the claimant the benefit of the doubt that upper extremity/shoulder pain further reduces her exertional capacity to a sedentary level with frequent reaching. I also accept her reports that cold increases pain, and find that she must avoid concentrated exposure to cold. These additional limitations address the limited response to medication and the reports of chronic fatigue, pain, and swelling. In light of the ability to cook, drive, use a computer, use a phone, care for young children, and the relatively normal clinical exams (normal gait, normal strength), the evidence supports no further restrictions.

(ECF No. 7, PageID #: 48).

#### 2. Treating Source Physician—Marie Kuchynski, MD

On September 28, 2020, Laney's treating physician, Dr. Kuchynski filled out a medical statement on Laney's behalf. Dr. Kuchynski stated that Laney had a history of joint pain,

5

swelling, and tenderness, morning stiffness, synovial inflammation, limitation of motion in joints, and serum rheumatoid factor. (ECF No. 7, PageID #: 671). She indicated that Laney had an inability to ambulate effectively and could only sit or stand for fifteen minutes at a time. (ECF No. 7, PageID #: 671). Dr. Kuchynski opined that Laney could lift ten pounds occasionally and five pounds frequently. (ECF No. 7, PageID #: 672). She suggested that Laney could occasionally finely and grossly manipulate and occasionally reach. (ECF No. 7, PageID #: 672). Finally, Dr. Kuchynski stated that Laney would be absent three times a month due to "bad days." (ECF No. 7, PageID #: 671–72).

The ALJ found that this opinion was not persuasive or supportable. (ECF No. 7, PageID #: 48). He reasoned:

> Although this is a specialized treating source, her opinions are inconsistent with the conservative treatment and the clinical findings. Dr. Kuchynski consistently noted normal strength, gait, and range of motion with no indication of ambulatory aides nor issues with ambulation. Greater emphasis is placed on the longitudinal treatment records, which do not reflect such severe limitations. Further, the claimant's activities including driving, writing, using a phone, using a computer, cooking, household chores (with help), cleaning laundry downstairs, and caring for several young children including homeschooling and babysitting, all reflect a greater functional capacity than this assessment suggests. Additionally, the claimant was able to paint her fence. (B9F/40)

(ECF No. 7, PageID #: 48).

**IV.    The ALJ's Decision**

The ALJ made the following findings relevant to this appeal:

> 3. The claimant has the following severe impairments: Rheumatoid arthritis involving multiple sites with positive rheumatoid factor; Raynaud's phenomenon; and Fibromyalgia (20 CFR 404.1520(c) and 416.920(c)).

6

> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: She could never climb ladders, ropes or scaffolds, but could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. She could frequently reach, handle and finger with the bilateral upper extremities. The claimant must avoid concentrated exposure to extreme cold and vibrations. She must avoid all exposure to hazards such as unprotected heights and moving mechanical parts.

(ECF No. 7, PageID #: 43–44).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial

7

evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Laney raises two issues on appeal. First, she argues that the ALJ incorrectly considered Dr. Kuchynski's medical opinion. Second, she asserts that the ALJ inappropriately analyzed her subjective allegations of pain. The Court will take each issue in turn.

    **1.    The ALJ Properly Considered Dr. Kuchynski's opinion**

8

Laney argues that the ALJ erred in concluding that Dr. Kuchynski's opinion was not persuasive because it was consistent with and supported by the treatment record.[1] At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). On January 18, 2017, the Social Security Administration amended the rules for evaluating medical opinions for claims filed after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." C.F.R. § 404.1520c(a). Nevertheless, an ALJ must "articulate how [he] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. 20 C.F.R. § 404.1520c(a). In doing so, the ALJ is required to explain how he considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(c), 404. 1520c(b)(2) ("The factors of supportability [] and consistency [] are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions . . . .").

As noted above, Dr. Kuchynski completed a medical statement and indicated that Laney had an inability to ambulate effectively and could only sit or stand for fifteen minutes at a time.

---

[1] The "treating source rule," which generally required the ALJ to defer to the opinions of treating physicians, was abrogated by 20 C.F.R. § 404.1520c for claims filed on or after March 27, 2017, such as here.

Dr. Kuchynski opined that Laney could lift ten pounds occasionally and five pounds frequently. She suggested that Laney could occasionally finely and grossly manipulate and occasionally reach. Finally, Dr. Kuchynski stated that Laney would be absent three times a month due to "bad days." (ECF No. 7, PageID #: 671–72).

The ALJ considered this opinion and stated:

> This assessment was in a checkbox format, with the only narrative in support being "patient has uncontrolled rheumatoid arthritis." (B11F) This assessment is not persuasive nor supportable. Although this is a specialized treating source, her opinions are inconsistent with the conservative treatment and the clinical findings. Dr. Kuchynski consistently noted normal strength, gait, and range of motion with no indication of ambulatory aides nor issues with ambulation. Greater emphasis is placed on the longitudinal treatment records, which do not reflect such severe limitations. Further, the claimant's activities including driving, writing, using a phone, using a computer, cooking, household chores (with help), cleaning laundry downstairs, and caring for several young children including homeschooling and babysitting, all reflect a greater functional capacity than this assessment suggests. Additionally, the claimant was able to paint her fence. (B9F/40).

Laney argues that the ALJ's analysis was error because he misinterpreted Dr. Kuchynski's opinion and the longitudinal record. She states that Dr. Kuchynski noted Laney's swelling on almost every examination and the swelling persisted despite medication. The ALJ's failure to consider these findings and only rely on findings that supported his analysis, Laney suggests, led to an inappropriate "cherry-picking" of the record. (ECF No. 10 at 18). The Commissioner responds that the ALJ reasonably found that the opinion was not persuasive, properly relying on its lack of supportability and consistency. The Court agrees.

As a preliminary matter, the Court notes that Laney's cherry-picking argument is not well-taken. "The problem with a cherry-picking argument is that it runs both ways. [Laney] argues the ALJ only focused on the positives, whereas [her] brief emphasizes the negatives.

10

Crediting [Laney's] argument here would require the Court to re-weigh evidence — which it cannot do." *Colvin v. Comm'r of Soc. Sec.*, No. 5:18 CV 1249, 2019 WL 3741020, at *14 (N.D. Ohio May 8, 2019). Instead, to be successful, Laney must show that the ALJ's decision is not supported by substantial evidence. "[A] claimant does not establish a lack of substantial evidence by pointing to evidence of record that supports her position. Rather, [the claimant] must demonstrate that there is not sufficient evidence in the record that would allow a reasoning mind to accept the ALJ's conclusion." *Greene v. Astrue*, No. 1:10-cv-0414, 2010 WL 5021033, at *4 (N.D. Ohio Dec. 3, 2010). Importantly, the ALJ acknowledged multiple findings of swelling throughout his discussion of the medical record and his RFC determination. However, as discussed below, the ALJ concluded that other findings did not support Dr. Kuchynski's opinion. The fact that the opinion was consistent with certain findings in the record does not render the ALJ's analysis incorrect. So long as the ALJ followed the regulations and supported his decision with substantial evidence, the Court will not remand the decision simply because there is evidence of the opposite conclusion. The Court determines that despite the evidence Laney showcases (evidence of consistent swelling), the ALJ's decision is supported by substantial evidence.

      First, the ALJ reasonably considered the supportability of the opinion and gave multiple reasons for concluding it was not supported. The ALJ first noted that the opinion was a checkbox opinion and the only narrative supporting it was that the "patient has uncontrolled rheumatoid arthritis." Courts throughout the Sixth Circuit have concluded that check-box opinions are unsupported and a reason to discount a medical opinion. *See Marks v. Comm'r of Soc. Sec.*, No. 1:16-cv-02848, 2018 WL 1801609, at *8 (N.D. Ohio Jan 12, 2018) ("Numerous decisions have found that the use of checklist or check-the-box forms in which the doctor provides little or no

11

accompanying explanation for the assessed limitations . . . are unsupported and, therefore, the ALJ may properly discount the treating source opinions." (citing *Kepke v. Comm'r of Soc. Sec.*, F. App'x 625, 630 (6th Cir. 2016))); *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 475 (6th Cir. 2016) (stating that check-box opinions are "weak evidence at best" (citations omitted)). The fact that Dr. Kuchynski provided a checkbox opinion that included little to no explanation was a reason to discount the opinion.[2] Moreover, the ALJ additionally noted that Dr. Kuchynski's own treatment notes consistently reported normal strength, gait, and range of motion with no indication of ambulatory aides nor issues with ambulation. Yet, in her opinion Dr. Kuchynski opined that Laney could not ambulate effectively and could only sit or stand for fifteen minutes at a time. This demonstrates that Dr. Kuchynski's own treatment notes did not support her opinion. Thus, the ALJ's determination that the opinion was not supported is supported by substantial evidence.

Second, the ALJ reasonably determined the opinion was not consistent with the medical record. The ALJ appropriately reasoned that the opinion was inconsistent with the conservative treatment history and clinical findings. A conservative treatment history is a reason to conclude more extreme limitations are not necessary. Additionally, as previously stated, Dr. Kuchynski's own treatment records consistently noted normal strength, gait, and range of motion with no indication of ambulatory aides nor issues with ambulation. Further, the ALJ explained that

---

[2] In her reply, Laney argues that the ALJ simply noted that the opinion was a checkbox opinion and did not actually rely on its form as a reason to discount it. However, that fact that an opinion is a checkbox opinion is a reason to discount the opinion "even when the ALJ did not specifically call attention to it in the decision." *Marks*, 2018 WL 1801609, at *8 ("Other courts have concluded the same, noting that 'even if the ALJ failed to provide good reasons' for assigning little weigh to a treating source's opinion, such error was harmless where the opinion consisted of a check-box worksheet lacking any explanation beyond a diagnosis." (citations omitted)). Thus, even if the ALJ did not rely on it as a reason to discount the opinion, it is a reason nonetheless.

Laney's activities were inconsistent with such extreme limitations. Laney's activities included driving, writing, using a phone, using a computer, cooking, household chores (with help), cleaning laundry downstairs, caring for several young children including homeschooling and babysitting, and painting her fence. These activities are inconsistent with a need to limit Laney's fine and gross manipulation to occasional. This is substantial evidence to support the ALJ's conclusion.

Nonetheless, Laney takes issue with the fact that the ALJ relied on Laney's activities to support his inconsistency conclusion. She argues that many of these activities caused pain and the ALJ provided "no nexus between these activities and Ms. Laney's ability to perform work on a sustained basis." (ECF No. 10 at 21). However, the ALJ did not use these activities to indicate that Laney was capable of work on a sustained basis. He simply stated that they were inconsistent with Dr. Kuchynski's proposed limitations. Moreover, the ALJ did not rely solely on Laney's activities. Instead, the ALJ pointed to objective medical findings in the record that were inconsistent with Dr. Kuchynski's proposed limitations such as a conservative treatment record and other normal findings. This is sufficient.

Finally, despite the ALJ following the relevant regulations, Laney argues that because the ALJ did not find any other opinion persuasive, he inappropriately substituted his own judgment for a physician's opinion in determining the RFC. Essentially, Laney argues that because the ALJ provided for a more restrictive RFC than what the state agency consultants recommended, his RFC was made in error. This argument is unavailing. The Court will not fault the ALJ for finding more restrictions than the state agency reviewers opined *See Warren v. Comm'r of Soc. Sec.*, No. 13-cv-13523, 2014 WL 3708565, at *4 (E.D. Mich. July 28, 2014) (affirming the ALJ's RFC as supported by substantial evidence, in part because the ALJ assessed a more

restrictive RFC than that opined by the claimant's physicians); *Mosed v. Comm'r of Soc. Sec.*, No. 2:14-CV-14357, 2016 WL 6211288, at *7 (E.D. Mich. Jan. 22, 2016) ("Plaintiff's argument that the ALJ erred in assessing a *more restrictive* RFC than that opined by the State agency consultants is curious and unavailing." (citations omitted)), *report and recommendation adopted*, No. 14-CV-14357, 2016 WL 1084679 (E.D. Mich. Mar. 21, 2016). Accordingly, Laney's first argument is without merit.

### 2. The ALJ appropriately considered Laney's subjective allegations of pain

Laney next argues that the ALJ inappropriately relied on her activities in considering her subjective allegations of pain. When determining whether a claimant is disabled, the ALJ considers all of the claimant's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective evidence in the record. SSR 16-3P, 2017 WL 5180304, at *2. A claimant's subjective complaints "can support a claim for disability[] if there is also objective medical evidence of an underlying medical condition in the record." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (citations omitted). However, the ALJ "is not required to accept a claimant's subjective complaints." *Id.* at 476 (citations omitted). "[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, [the ALJ] will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner." SSR 16-3P, 2017 WL 5180304, at *8. The ALJ "must clearly state [her] reasons" for discounting or rejecting a claimant's subjective complaints. *Harper v. Comm'r of Soc. Sec.*, No. 1:20-CV-1304, 2021 WL 2383833, at *11 (N.D. Ohio May 25, 2021) (citing *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994)), *report and*

14

*recommendation adopted*, No. 1:20-CV-1304, 2021 WL 2381906 (N.D. Ohio June 10, 2021).

Here, the ALJ did not include a specific paragraph explaining why he rejected Laney's subjective allegations. However, contrary to Laney's arguments, the ALJ made multiple findings throughout the decision regarding Laney's subjective allegations. *See Harper v. Comm'r of Soc. Sec.*, No. 1:20-CV-1304, 2021 WL 2383833, at *11 (N.D. Ohio May 25, 2021) ("While the ALJ must discuss significant evidence supporting his decision and explain his conclusions with sufficient detail to permit meaningful review, there is no requirement that the ALJ incorporate all the information upon which he relied into a single tidy paragraph."). First, after reciting Laney's testimony and other reported symptoms, the ALJ noted several inconsistencies. For example, the ALJ noted that Laney reported that going up stairs "was not an option" but testified that she goes up and down stairs to do laundry. She stated that she could not really use her hands but filled out a function report with neat handwriting. Laney denied driving in her report but testified that she drives. The ALJ explained that these "inconsistencies in allegations render her subjective reports not fully persuasive." (ECF No. 7, PageID #: 45).

Then, in explaining why he gave Laney more limitations than the state agency medical consultants recommended, he reasoned:

> I give the claimant the benefit of the doubt that upper extremity/shoulder pain further reduces her exertional capacity to a sedentary level with frequent reaching. I also accept her reports that cold increases pain, and find that she must avoid concentrated exposure to cold. These additional limitations address the limited response to medication and the reports of chronic fatigue, pain, and swelling. In light of the ability to cook, drive, use a computer, use a phone, care for young children, and the relatively normal clinical exams (normal gait, normal strength), the evidence supports no further restrictions.

(ECF No. 7, PageID #: 48). Finally, in a conclusory paragraph, the ALJ explained that the RFC "accommodates the claimant's subjective complaints to the extent that they are supported by

medical evidence. There is nothing in the record that justifies any further reduction in the residual functional capacity contained herein." (ECF No. 7, PageID #: 48).

Laney argues that the ALJ erred by relying on her activities to discount her subjective allegations of pain. She states that the ALJ did not provide a nexus between these activities and her ability to perform work on a sustained basis. This failure to provide a rationale, Laney asserts, was error. The Commissioner responds that the ALJ appropriately considered Laney's subjective allegations but found that they were inconsistent with the medical record and her reported activities. The Court agrees. Contrary to Laney's arguments, the ALJ did not solely rely on her activities in rejecting her subjective allegations. As noted, the ALJ concluded that Laney's subjective allegations were less persuasive because her testimony and functional report had multiple inconsistencies. This was not the ALJ relying on the activities as evidence of the ability to work but to demonstrate contradictions in her allegations. *See Hawk v. Astrue*, 4:11CV196, 2012 WL 3044291, at \*6 (N.D. Ohio July 25, 2012) ("An ALJ may discount a claimant's credibility where the ALJ finds contradictions among the medical records, claimant's testimony, and other evidence." (citations omitted)); *Blevins v. Comm'r of Soc. Sec.*, No. 1:15-CV-717, 2017 WL 769873, at \*7 (S.D. Ohio Feb. 8, 2017) ("[A]n ALJ may properly consider a Plaintiff's inconsistent statements and other inconsistencies in the record . . . ."), *report and recommendation adopted*, No. 1:15-CV-717, 2017 WL 773626 (S.D. Ohio Feb. 27, 2017). The ALJ also reasoned that the medical record did not justify any further limitations. The ALJ noted that most of the medical records showed normal findings. *See Minor v. Comm'r of Soc. Sec.*, No. 5:18 CV 2233, 2019 WL 6525601, at \*29 (N.D. Ohio Dec. 4, 2019) ("Where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ 'has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in

16

the administrative record.'" (citations omitted)). Laney does not challenge either of those findings.

Instead, Laney simply takes issue with the fact that the ALJ additionally relied on her activities to discount her allegations. She asserts that the "ALJ's reliance on isolated activities is misplaced." (ECF No. 10 at 23). The Court first notes that the ALJ appropriately considered Laney's activities as instructed by SSR 16-3P, 2017 WL 5180304, at *8. Moreover, the above discussed reasons (inconsistencies and lack of objective medical evidence to support her statements) were sufficient to discount Laney's allegations. The Court concludes that ALJ appropriately considered Laney's subjective allegations and properly decided not to wholly accept them. This would be true even if the ALJ also inappropriately relied on Laney's activities in making this conclusion. *See Reynolds v. Comm'r of Soc. Sec. Admin.*, No. 5:20-CV-01876-BYP, 2021 WL 6881247, at *10 (N.D. Ohio Sept. 27, 2021) ("While the Court rejected two of the ALJ's reasons for discrediting Claimant, the ALJ provided two sufficient reasons that were supported by substantial evidence. There exists, therefore, no compelling reason for the Court to disturb that finding."), *report and recommendation adopted sub nom. Reynolds v. Comm'r of Soc. Sec.*, No. 5:20CV1876, 2022 WL 278112 (N.D. Ohio Jan. 31, 2022). Thus, the Court finds no error in this analysis.

Additionally, Laney briefly mentions that the ALJ improperly relied on her activities in determining the RFC. Laney does not fully develop this argument. Nonetheless, to the extent she argues that the ALJ's RFC is not supported by substantial evidence because the ALJ did not explain how Laney's "limited activities" support the RFC, this argument is without merit. The ALJ did not merely rely on her activities. Rather, the ALJ explained that he determined the RFC based on "relatively normal clinical exams" (ECF No. 7, PageID #: 48) and activities

17

inconsistent with more extreme limitations. Additionally, the State Agency reviewers did not suggest more extreme limitations and Laney had a conservative treatment history. This is substantial evidence for the RFC. Laney asserts that swelling in her hands requires more restrictive limitations. However, as the ALJ noted, despite this swelling, Laney was able to cook, drive, use a computer, use her phone, and take care of young children. The ALJ appropriately considered this evidence inconsistent with more restrictive limitations. This reason in addition to conservative treatment and relatively normal clinical exams provides substantial evidence for the ALJ's RFC determination. Accordingly, the Court finds no reason to disturb the ALJ's decision.

## VI. Conclusion

Based on the foregoing, the Court AFFIRMS the Commissioner's final decision denying Laney SSI and DIB.

**IT IS SO ORDERED.**

Dated: June 16, 2022

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE